OPINION OF THE COURT
Benjamin Altman, J.
The question before this court now is whether psychological opinion evidence should be allowed to be presented to the jury on the question of voluntariness of the confession.
The defendant seeks to introduce at trial testimony of Dr. Milton V. Kline, a clinical psychologist. The defendant’s offer of proof as to such testimony indicates that Dr. Kline will testify that inculpatory statements made by the defendant were the result of psychological pressure and that he was susceptible to suggestion as a result of psychological pressure brought to bear by the police.
The defendant is charged with pushing Renee Katz in front of an oncoming subway train on June 7, 1979. On August 21, 1979, the defendant made inculpatory statements regarding the crime to detectives of the New York City Transit Authority Police Department and to an Assistant District Attorney.
On November 18, 1979, a Huntley hearing was held before the court regarding those statements. At the hearing the People called Detectives Powers, Morgan, Lonergan, and Cavanaugh. Dr. Milton Kline testified on behalf of the defendant. After a three-day hearing, the defendant’s motion to suppress was denied.
Dr. Kline testified that Allen Lewis was, in varying degrees, confused, disoriented and out of touch with reality and susceptible to psychological pressure when he made the inculpatory statements. Dr. Kline’s conclusions are based on two clinical sessions with the defendant, one while the defendant was in a hypnotic state and one while he was awake.
In order for the proffered testimony of Dr. Kline, based on hypnotic interview, to be admitted, the reliability of the hypno-induced statements must be proved.
*883 The testimony must be offered by a qualified expert (People v Busch, 56 Cal 2d 868). It is important that there be no unnecessary subjectiveness in the hypnotic session.
In the article, The Use of Hypnosis in the Defense of Criminal Cases (Warner, 27 International Journal of Clinical and Experimental Hypnosis, p 417), the case of State v White (Circuit Ct, Branch 10, Milwaukee County, March 27, 1979) is cited. There, the court enumerated certain safeguards to insure the reliability of the statements made:
(1) The person administering the hypnotic session ought to be a mental health person with special training in the use of hypnosis, preferably a psychiatrist or a psychologist.
(2) This specially trained person should not be informed about the case verbally. Rather, such person should receive a written memorandum outlining whatever facts are necessary to know. Care should be exercised to avoid any communication that might influence the person’s opinion.
(3) Said specially trained person should be an independent professional not responsible to the prosecution, investigators or the defense.
(4) All contact between the specially trained person and the subject should be video taped from beginning to end.
(5) Nobody representing the police or the prosecutor or the defendant should be in the same room with the specially trained person while he is working with the subject.
(6) Prior to induction a mental health professional should examine the subject to exclude the possibility that the subject is physically or mentally ill and to confirm that the subject possesses sufficient judgment, intelligence, and reason to comprehend what is happening.
(7) The specially trained person should elicit a detailed description of the facts as the subject believes them to be prior to the use of hypnosis.
(8) The specially trained person should strive to avoid adding any new elements to the subject’s description of her/ his experience, including any implicit or explicit cues during the presession contact, the actual hypnosis and the postsession contact.
(9) Consideration should be given to any other evidence tending to corroborate or challenge the information garnered during the trance or as a result of posthypnotic suggestion.
The hypnotic session in this case did not comply with the *884 enumerated safeguards! There is no video tape of the interview session. There is only a tape recording of part of the session. There is no evidence of what transpired between the hypnotist and the defendant prior to the time hypnosis was induced. The defendant’s attorney was present at the hypnotic session. This is clearly a departure from the accepted procedure. The court is also concerned about testimony from the hypnotist who testified that a subject could lie under hypnosis as readily as if he were not hypnotized. This theory is corroborated by medical authorities. In a treatise on medical hypnosis it is stated, "A guilty person, it would appear, is just as much likely to resist the truth under hypnosis as when he is in a normal state” (Ambrose and Newbold, Handbook of Medical Hypnosis, [1958 ed], p 23).
In an early leading article on hypnosis it was observed "hypnotic subjects, like alcoholic subjects, can lie consciously; they even invent subtle webs of falsehood, as well as those who are in the normal state of waking. Indeed, in certain cases the disposition to prevaricate, and a certain low but effective form of animal cunning, are developed by the hypnosis itself; while an increased suggestibility for all kinds of illusions and hallucinations is as much as essential feature of the dream-life of hypnotic, as it is of normal sleep” (Ladd, Legal Aspects of Hypnotism, 11 Yale LJ 173, 187-188). The noted psychiatrist Erikson in An Experimental Investigation of the Possible Anti-Social Uses of Hypnosis (2 Psychiatry, 391-399, 404) found that although hypnosis may in some instances be very effective in getting information from the subject, often the desire for self-protection remains unaffected by hypnosis, and the subject may lie. Much of the defendant’s statements under hypnosis were at odds with material contained in reports examined in camera by this court.
Because the defendant may be lying, his statements may have been suggested by unrecorded leading questions, and because the hypnotist failed to follow the above listed safeguards, the reliability of the defendant’s statements while under hypnosis has not been established.
To warrant the use of expert testimony, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman. Second, the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that *885 his opinion or inference will probably aid the trier in his search for the truth (McCormick, Evidence, [2d ed], § 13).
Richardson states: "In all cases in which the facts can be placed before the jury by any witness, skilled or unskilled, who is capable of describing them accurately, so that a jury of average intelligence and training can understand them and form a proper conclusion based upon them, expert opinion is inadmissible.” (Richardson, Evidence, [10th ed], p 341.)
In the case before the court whether the defendant’s inculpatory statements were voluntarily made is a question for the jury to determine. The circumstances of the questioning and confession were presented to the jury. The psychologist had nothing to add to the facts of the interrogation. A jury of average intelligence could form a proper conclusion without the aid of the psychologist. In fact, testimony of the psychologist would serve only to unduly confuse the jury and confound the issues in the case. The issue here is not what the state of mind of the defendant was when he allegedly committed the crime, but was his confession voluntary. As to this confession, the facts are properly before the jury. The psychologist would not add any objective facts upon which the jury could base its conclusion. Ample evidence has been presented to the jury for it to make the determination whether the defendant was able to understand and intelligently waive his rights.
Dr. Kline is prepared to testify that the defendant shows no evidence whatsoever of mental illness or psychopathology. The defendant’s intelligence is above average and his coping skills generally adequate. The doctor would testify that as a result of the defendant’s personality structure he would be compliant to the point of accepting ideas of his interrogators in order to avoid punishment. The doctor based his clinical assessment in part on statements of the defendant regarding treatment by his family during his childhood. This information is irrelevant to the question before the jury. An admission is involuntarily made when it is obtained by the use or threatened use of physical force or other improper conduct or undue pressure which impaired the defendant’s physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement. (CPL 60.45.) The opinion evidence offered by the psychologist is neither necessary nor relevant to aid the jury in its determination of voluntariness of the confession.
*886 Thus, the opinion of Dr. Kline based on defendant’s statements while under hypnosis is excluded.